IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Vicky S. Young, | ) |
| Plaintiff, | ) Civil Action No. 3:09-01676-JMC-JRM |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

This case is before the court pursuant to Local Civil Rule 83.VII.02, *et seq.*, DSC, concerning the disposition of Social Security cases in this District. The Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on April 24, 2006, alleging disability beginning on April 7, 2006 (Tr. 100-102). Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). On September 16, 2008, a hearing was held at which Plaintiff (represented by counsel), Plaintiff's spouse, and a vocational expert ("VE") testified. On October 16, 2008, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled within the meaning of the Act because she was able to perform her past relevant work as an administrative assistant and as a hotel/motel night auditor.

Plaintiff was fifty-five years old at the time of the ALJ's decision. She has a twelfth grade education with past relevant work as an administrative assistant, hotel/motel night auditor, and secretary/receptionist. Plaintiff alleges disability due to acute respiratory distress syndrome ("ARDS"), a blood clot, arthritis, post traumatic stress syndrome ("PTSS") anxiety, joint pain, and partial loss of mobility (Tr. 144).

1

The ALJ found (Tr. 16-20):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since April 7, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. Since the alleged onset date of disability, the claimant has had the following severe impairments: degenerative disc disease and history of acute respiratory distress syndrome (ARDS) with residual effects. There is no evidence that the claimant has had a severe mental impairment which has lasted for a period of twelve continuous months since the alleged onset date (20 CFR 404.1520(c)).

4. Since the alleged onset date of disability, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a). Specifically, she can lift, carry, and push/pull ten pounds occasionally and less than ten pounds frequently, except she can never push or pull with the lower extremities or operate foot controls. She must have the option to sit or stand at her workstation as needed, and must be able to use a cane when walking or standing. She is limited to frequent handling and fingering with her hands. She may occasionally stoop and climb stairs and ramps, but is unable to kneel, crouch, crawl, climb ladders, ropes or scaffolds, or balance on catwalks or on dangerous/slippery surfaces. She is unable to work at unprotected heights or around dangerous moving machinery. She must avoid even moderate exposure to humidity, wetness, extreme cold, extreme heat, fumes, odors, dust, gases, and poor ventilation.

6. The claimant is capable of performing past relevant work (20 CFR 404.1565).

7. The claimant has not been under a disability since the alleged onset date through the date of this decision (20 CFR 404.1520(e)).

On April 27, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. This civil action was commenced on June 24, 2009.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42

U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL RECORD

Dr. Melissa Terchek, a physician with Carolina Rheumatology, evaluated Plaintiff on January 1, 2005 for a history of neck and shoulder pain, weakness in her legs, burning and throbbing in her second fingers, and pain in her right knee. An MRI from 2002 revealed moderate stenosis and degenerative disc disease in her low back as well as herniated discs with left foraminal stenosis in her neck. Dr. Terchek continued Plaintiff's prescriptions of Premarin, Xanax, Respa, Flexeril, and Prevacid and added Neurontin. Tr. 209.

On February 20, 2005, Plaintiff was admitted to the hospital for respiratory failure, pneumonia, and sepsis. Tr. 217-218, 223-234. After approximately a month, she was transferred from the hospital to a rehabilitation clinic for aggressive physical and occupational therapy. Tr. 223-224, 241-242. She returned to the hospital from March 30 to April 5, 2005 for treatment of deep venous thrombosis and then was transferred back to the rehabilitation facility. Tr. 241-242, 249. Plaintiff was hospitalized again on April 13 for likely Coumadin (blood thinner) toxicity. Tr. 257-258.

In May 2005, an MRI of Plaintiff's left shoulder revealed a tear of the anterior glenoid labrum. MR arthrogram for further delineation of the tear was recommended. Tr. 358, 389.

In May 2006, Dr. Terchek treated Plaintiff for aches and pains, stiffness, degenerative joint disease with reported symptoms of weakness in her legs and numbness in her fingers, and pain and burning in her right knee. Neurontin was prescribed and Plaintiff was directed to perform no bending or lifting. Tr. 397.

Dr. Patrick Jerrell, a state agency psychologist, reviewed Plaintiff's medical evidence. On May 25, 2006, he opined that Plaintiff's mental impairments did not cause her any functional limitations and therefore were not severe. Tr. 360-373.

Dr. Karen Mahood examined Plaintiff at the request of the Commissioner on June 29, 2006. Plaintiff scored 29/30 on a mental status examination. She walked unassisted but slowly, favoring her left leg, and was able to get up and down off the exam table unassisted. She was able to button her own clothes, hold a pencil, and perform a finger-to-thumb test. Examination revealed that Plaintiff's lungs were clear, she had decreased sensation in her right lower extremity, deep tendon reflexes of 2/4 in all extremities, and muscle strength of 3/5 in all extremities. Dr. Mahood assessed status post ARDS, status post deep venous thrombosis, fatigue, and right-sided weakness. Tr. 374-376.

In July 2006, Plaintiff reported to Dr. Tercheck that she had pain in her left hip, knees, and fingers that was a seven out of ten. Dr. Tercheck noted that Plaintiff's x-rays showed normal hands, wrists, knees, and pelvis. Plaintiff's back x-rays revealed mild sacroiliitis and hip spurs. Tr. 398.

Dr. Charles Fitts, a state agency physician, reviewed Plaintiff's medical records and completed a residual functional capacity ("RFC") assessment on August 9, 2006. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand/walk or sit for about six hours during an eight-hour workday; occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and could occasionally balance, stoop, kneel, crouch, and crawl. Tr. 378-385.

An MRI in August 2006 showed lumbarization of Plaintiff's S1 vertebrae, mild central disc protrusion at L5-S1, posterior element hypertrophy causing prominent left-sided lateral recess stenosis with likely compression of the descending S1 nerve root, and moderate right lateral recess narrowing with mild central canal stenosis. Tr. 387.

Dr. Judith Vonn, a state agency psychologist, opined in November 2006 that Plaintiff's mental impairments were not severe. Tr. 400-413. On November 14, 2006, Dr. Joseph Gonzalez (a

4

state agency physician) opined that Plaintiff could lift ten pounds occasionally and less than ten pounds frequently; stand/walk for at least two hours during an eight-hour workday; sit for about six hours during an eight-hour workday; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. Tr. 414-421.

Plaintiff sought care at the emergency room ("ER") on three occasions in January 2007 for complaints of a sore throat, cough, shortness of breath, confusion, and nausea with vomiting. Care providers ran numerous tests, each time finding no abnormalities, including unremarkable blood work, urinalysis, chest x-ray, CT scan, and EKG. Tr. 438-439, 442-443, 457. On June 15, 2007, a chest x-ray at the ER showed a little bit of reactive airway disease. Plaintiff was diagnosed with acute bronchitis versus atypical pneumonia and directed to follow-up with her primary care provider. Tr. 465-466. On March 5, 2008, Plaintiff complained of migraine headaches. A brain scan at the ER was normal. Tr. 477, 479.

Plaintiff routinely sought treatment from Dr. Duffey. His records are difficult to read, but show that they regularly prescribed Xanax and other medications for her and diagnosed her with depression and/or anxiety. Tr. 327-333, 391-396, 505-536.

On August 27, 2008, Plaintiff visited Dr. Duffey for a "Disability Exam" for her back pain and depression. His examination revealed positive straight leg raise testing (indicating radicular pain), primarily normal motor strength, and normal reflexes. Tr. 537. On a form concerning Plaintiff's mental impairments, Dr. Duffey checked that Plaintiff had moderate to marked restriction on activities of daily living; extreme difficulty in maintaining social functioning; and deficiencies in concentration, persistence, or pace. He thought that her ability to remember locations and work-like procedures was moderately impaired; her ability to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods of time was markedly limited; and her ability to perform activities within a schedule and work with others without being distracted was extremely impaired. He opined that Plaintiff was not significantly limited in her ability to understand, remember, and carry out short and detailed instructions and sustain an ordinary

work routine without special supervision. Dr. Duffy wrote that Plaintiff was not currently able to work and was very easily agitated. Tr. 497-502.

On a form regarding low back pain, Dr. Duffy wrote that examination revealed neuro-anatomic distribution of pain, limitation of motion in Plaintiff's spine, positive straight leg raise test, severe burning or painful dysesthesia, the need to change position more than once every two hours, pseudoclaudication, chronic nonradicular pain, and weakness. He opined that Plaintiff suffered from severe pain and was limited to standing or sitting for 30 minutes at one time, could work zero hours per day, lift no weight on an occasional or frequent basis, occasionally bend, and never stoop. In handwritten notes, he opined that Plaintiff was very limited because of back pain. Tr. 501.

On a form regarding Plaintiff's respiratory condition, Dr. Duffey opined that Plaintiff could stand for 30 minutes at one time and 60 minutes per day; sit for 30 minutes at one time and 60 minutes total per day; and had other postural, manipulative, and environmental limitations. He thought that Plaintiff experienced severe to extreme pain and was in pain every single day. Tr. 503-504.

After the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council which consisted of December 2008 examination notes and disability forms from Dr. Terchek. Dr. Terchek recorded that Plaintiff had 18/18 trigger points on examination and diagnosed fibromyalgia and osteoarthritis. She wrote that she previously examined Plaintiff on May 19, July 21, September 22, and November 21, 2006. Dr. Terchek opined that Plaintiff's pain was often severe enough to interfere with concentration and attention. She estimated that Plaintiff could walk less than one city block without resting, could sit for 30 minutes at one time, could stand for 15 minutes at one time, and could sit or stand/walk for less than two hours per day. She opined that Plaintiff needed to elevate her legs for 50 percent of the workday, could use her hands for five percent of a workday, and could use her fingers or arms zero percent of a workday. Additionally, she thought that Plaintiff would miss more than four days per month from work, on average, as a result of her impairments.

Dr. Tercheck completed additional medical source statements on behalf of Plaintiff regarding the specific symptoms of her impairments. Tr. 546-560.

## HEARING TESTIMONY

Plaintiff stated that she lived with her spouse and six-year old grandson. With her grandson she read, played games, helped him with his homework, and took him to and from school Tr. 26. Her daily activities included folding clothes, some dusting, cooking, and watching television. Tr. 33. Her hobbies included reading, playing games on the computer, and doing a bit of sewing. Plaintiff stated she was fired in April 2006 because she could not perform some of the duties of her job; she stated she had not worked since that time. Tr. 27. She said that she was able to get up and move around as needed at her past relevant jobs of secretary, receptionist, and administrative assistant. Tr. 39.

Plaintiff testified that she used a cane (which she said a doctor prescribed in 2005) on her "bad days." Tr. 27. She stated that her hands occasionally tingled, she lost some coordination in her hands, and her legs sometimes gave out on her. Tr. 30-31. Plaintiff said she had been taking medication for depression for about thirteen years. She saw her primary provider, Dr. Duffey, about once or twice per month for her impairments since 2003. Tr. 36.

Plaintiff thought she could stand for about 10-15 minutes without a cane and about 45-60 minutes with her cane. She could sit for about 30-45 minutes before she had to move around. Tr. 34-35. Plaintiff estimated she could walk about 100 feet before she had to rest. Tr. 35. She said she could only lift 2-3 pounds. Tr. 38.

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and the ALJ: (1) failed to properly analyze whether she could perform her past relevant work; (2) failed to consider whether she met the Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1, at §1.04A; and (3) did not properly analyze the opinions of her treating and evaluating physicians. She also argues that various Social Security Rulings strongly support a finding of disability given the ALJ's findings concerning her RFC. The Commissioner contends that the ALJ's

decision is supported by substantial evidence[1] and free of harmful legal error. Specifically, the Commissioner argues that (1) the medical evidence does not support Plaintiff's assertion that she met or equaled Listing 1.04A; (2) the ALJ gave good reasons for finding that Dr. Duffey's opinion was not entitled to great weight; (3) the ALJ properly relied on the testimony of the VE to support the finding that Plaintiff could return to her past relevant work; and (4) the Appeals Council properly concluded that the additional evidence form Dr. Terchek would not have changed the ALJ's decision.

    A.    <u>Listings</u>

Plaintiff appears to contend that her impairments met or equaled Listing 1.04A such that she should have been found disabled at step three of the sequential evaluation process.[2] She argues that although the ALJ considered whether she met Listing 1.04C, there is no indication that the ALJ considered whether she met Listing 1.04A. Plaintiff points out that "listing 1.04 A does not include any requirement that the Plaintiff demonstrate that he is unable to ambulate effectively." (Plaintiff's Brief, at pages 30-31). The Commissioner argues that the ALJ properly concluded that the Plaintiff did not meet Listing 1.04A because she did not have the "radicular signs" (including pain, weakness, and sensory loss) necessary to meet Listing 1.04A.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990). It is not enough that the claimant

---

[1] Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

[2] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. <u>See</u> 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working (performing substantial gainful employment), (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. <u>See</u> <u>id.</u>

have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds). An ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning. See Rice v. Barnhart, 384 F.3d 363, 369-370 (7th Cir. 2004).

Listing 1.04 provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>> or
>> *****
>> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04. In her decision, the ALJ wrote:

> The undersigned has considered Listings 1.00 for musculoskeletal impairments and 3.00 for respiratory impairments. However, the evidence does not support a finding that any of the claimant's impairments are of listing level severity. Her musculoskeletal impairments have not resulted in radicular signs and findings which prevent her from ambulating effectively or performing fine and gross movements with the upper extremities.

Tr. 17. This suggests that the ALJ was referring to, but not expressly citing, Listing 1.04C or Listing 1.00(B)(2)(b), both of which contain the language "resulting in inability to ambulate effectively[.]" Listing 1.00(B)(2)(b) defines "Inability to Ambulate Effectively[.]"

Here, it is unclear whether the ALJ considered whether Plaintiff met or equaled Listing 1.04A. The Commissioner does not specifically address Plaintiff's argument, but appears to argue that it does not matter whether the ALJ specifically considered Listing 1.04A because Plaintiff does not have the necessary objective findings to meet or equal that listing anyway. Plaintiff's August 2006 lumbar spine MRI showed "likely" nerve root compression. Tr. 387. Dr. Mahood's examination revealed that Plaintiff had decreased deep tendon reflexes in all extremities, decreased muscle strength in all extremities, and decreased sensation in her right lower extremity. Tr. 374-376. The Commissioner, however, argues that Plaintiff has not shown the necessary motor loss or sensory/reflex loss because Dr. Terchek's examination showed that Plaintiff had normal motor strength, grip strength, and deep tendon reflexes (Tr. 399), and Dr. Duffey's medical source statement indicated that Plaintiff did not have motor loss or sensory/reflex loss (Tr. 501).

Plaintiff has presented evidence that may show that she met or equaled the Listing at § 1.04A, such that the ALJ should have considered this Listing. The Commissioner points to some contradictory evidence. It is, however, unclear from the ALJ's decision whether the ALJ considered whether Plaintiff met or equaled this Listing.

### B. Treating Physician

Plaintiff asserts that the ALJ did not perform the analysis of the treating and evaluating physician opinions required by 20 C.F.R. § 404.1520(d)(1)-(6), SSR 96-2p, and SSR 96-5p. Specifically, she argues that the ALJ erred in discounting Dr. Duffey's opinion. As noted above, Dr. Duffey found in August 2008 that Plaintiff had moderate to marked restrictions in areas

of mental functioning and could not work; opined that because of her low back pain she could only sit or stand for thirty minutes at a time, could not work, and could lift no weight; and opined that because of her respiratory condition she could only stand for 30 minutes at a time and 60 minutes per day, could only sit for 30 minutes at a time and 60 minutes total per day, had other limitations, and experienced severe to extreme pain. The Commissioner contends that the ALJ provided good reasons, in accord with the regulatory factors, for finding Dr. Duffey's opinion was not entitled to great weight.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d). Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

In his finding that Plaintiff did not have any severe mental impairments, the ALJ wrote:

> Dr. Duffey's opinion [in August 2008] is the first indication in the record that the claimant suffers from severe mental problems. This is supported by his treatment

records, which note on August 27, 2008, that the claimant was having multiple symptoms related to depression and PTSD. However, his records prior to this date do not indicate the presence of any severe mental symptoms or treatment for them (Exhibit 18F).

Tr. 17. She later wrote:

As explained above, the undersigned does not give weight to Dr. Duffey's assessment regarding the claimant's mental limitations because it is not supported by the evidence, including his treatment records (Exhibit 16F). For similar reasons the Administrative Law Judge does not give weight to Dr. Duffey's assessments regarding the claimant's physical limitations (Exhibit 16F). The claimant returned to work following her treatment for ARDS and there is no evidence of a significant decline in her status since that time, either in Dr. Duffey's notes or other evidence of record. Her testimony of her daily activities supports a conclusion that she is capable of greater physical activity than Dr. Duffey assessed. For these reasons, his opinions have not been given weight.

Tr. 20.

Although the ALJ appears to have discounted Dr. Duffey's opinion as not supported by his treatment notes, there is no discussion of the treatment notes. Dr. Duffey treated Plaintiff for a period of almost four years. Review of Dr. Duffey's medical records reveals that he noted that Plaintiff was depressed in December 2005, noted anxiety and depression in April 2006, and appears to have continually prescribed Zoloft and Xanax for her mental impairments. See Tr. 328-330, 332-333. Dr. Duffey treated Plaintiff for leg pain, shoulder pain, and swelling (Tr. 338), knee pain (Tr. 332), joint pain (Tr. 328). Additionally, there is objective medical evidence which may support Dr. Duffey's findings. The MRI of the Plaintiff's left shoulder on May 23, 2005, revealed a "joint effusion" and a "likely" tear in the anterior glenoid labrum (Tr. 389). On August 21, 2006, the MRI of Plaintiff's lumbar spine indicated a central disk protusion. Tr. 387. It is unclear from the ALJ's decision whether she analyzed the factors set out in 20 C.F.R. § 404.1527. This action should be remanded to the Commissioner to consider Dr. Duffey's opinion in light of the applicable law.[3]

---

[3]Plaintiff also asserts that the Appeals Council erred by not providing a basis for rejecting Dr. Terchek's opinions rendered after the ALJ's decision. As it is recommended that this action be remanded, it is also recommended that upon remand the ALJ consider the evidence that was submitted to the Appeals Council, including Dr. Terchek's opinions.

C.  RFC

Plaintiff contends that the ALJ failed to perform an analysis of her ability to perform her past relevant work that complies with the requirements of SSR 82-62, 20 C.F.R. §404.1520, and Fourth Circuit precedent. The Commissioner contends that the ALJ made the proper factual findings in reaching his conclusion that Plaintiff could return to her past work.

At the fourth step of the disability inquiry, a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. See SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

A claimant will be considered not disabled if she can still do the kind of work she did in the past. 20 C.F.R. § 416.920(e). Kind of work "concentrates on the claimant's capacity to perform a type of activity rather than her ability to return to a specific job or to find one exactly like it." Pass v. Chater, 65 F.3d at 1204. The Commissioner may rely on the general job categories of the Dictionary of Occupational Titles ("DOT") as presumptively applicable to the claimant's prior work. DeLoache v. Heckler, 715 F.2d 148, 151 (4th Cir. 1983). The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform his past relevant work. See 20 C.F.R. §§ 404.1560, 416.960.

SSR 82-62 provides:

> The claimant is the primary source for vocational documentation...[d]etermination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

SSR 82-62. This Ruling further provides:

13

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Id.

Counsel for the Commissioner contends that the ALJ satisfied the first of the three-part requirements by determining that the Plaintiff could perform a reduced range of sedentary work as outlined at Tr. 17-18; the ALJ satisfied the second requirement when the VE testified as to the SVP[4] of Plaintiff's past work; the ALJ properly relied on the "fact-specific testimony of a vocational expert regarding Plaintiff's ability to perform her past work[;]" and the VE's testimony did not conflict with the information in the DOT.

The ALJ met the first requirement of SSR 82-62 in that he made a finding of fact as to Plaintiff's RFC. See Tr. 17-18. Through a series of hypothetical questions, the ALJ set out these limitations to the VE. See Tr. 44-46. As to the second requirement (a finding of fact as to the physical and mental demands of the past job/occupation), however, the ALJ did not discuss the physical and mental demands of Plaintiff's past job/occupation other than to state that the VE testified based on the RFC that Plaintiff could perform her past relevant work as an administrative assistant and night auditor as she actually performed the jobs and as those jobs are performed in the national economy. Review of the hearing transcript reveals that no findings were made as to the demands of these jobs as Plaintiff actually performed them, other than that Plaintiff was unable to perform the bending, stooping, and filing requirements of her last job (Tr. 27-28) and a question of

---

[4]SVP "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." U.S. Department of Labor, Dictionary of Occupational Titles, Appendix C (4th ed.1991).

whether she was able to alternate her positions (sitting and walking) with her past jobs (Tr. 39). The VE did not set forth the physical and mental demands as Plaintiff actually performed them and does not appear to have considered Plaintiff's problems with her past relevant work, merely discussing the jobs as they were generally performed by identifying the DOT number of each job, stating that each position was sedentary and that the administrative assistant position had a SVP of seven and the night auditor a SVP of five. Tr. 43. Thus, the second requirement is not met. See, e.g., Parker v. Astrue, 664 F.Supp.2d 544 (DSC 2009); Prim v. Astrue, No. 7:07cv213, 2008 WL 444537 (W.DVa. February 13, 2008). As this second requirement was not met, it is not possible to analyze whether the third requirement was met. Thus, this action should be remanded to the ALJ to analyze Plaintiff's ability to perform her past relevant work in light of the requirements of SSR 82-62.

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence and correct under correct law. This action should be remanded to the Commissioner to consider whether Plaintiff met or equaled Listing 1.04A, properly evaluate the opinion of Plaintiff's treating physicians, and determine whether Plaintiff can perform her past relevant work.

It is, therefore, RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

September 2, 2010
Columbia, South Carolina